## WILLIAM A. ADAMS' ADMINISTRATORS v. WILLIAM HUFFINGTON'S ADMINISTRATORS.

High Court of Errors and Appeals. October 20, 1821.

*Ridgely's Notebook III, 517.*

*Robinson, Vandyke* and *Cooper* for plaintiff. *Johns* for [defendants].

This was an action of covenant. Special demurrer to declaration. Judgment below for plaintiff. Writ of inquiry, verdict and judgment. Huffington's administrators were plaintiffs below; Adams's administrators, defendants. . . .

This cause was argued before RIDGELY, CHANCELLOR, WARNER, WAY and COOPER, Justices of the Court of Common Pleas, at an adjournment of this Court; and it was kept under consideration until this day, December 1, to which time the Court adjourned, when CHANCELLOR RIDGELY delivered the following unanimous opinion of the Court:

This case came before the Court upon a special demurrer to the declaration on the following facts: John Adams and his wife and William Alexander Adams, by their indenture dated August 27, 1806, bargained and sold to William Huffington and James Huffington in fee four hundred acres of land situate in Nanticoke Hundred in Sussex County; and for themselves, their heirs, executors and administrators did covenant and agree to and with the said William Huffington and James Huffington that before the sealing and delivery of the said indenture they stood seised in fee simple of and in the land aforesaid, and that they had a good right and lawful to sell and convey the same unto them; and against the lawful heirs of Dr. Patrick Stuart, late of etc., and against the lawful heirs of George Adams, and against the lawful heirs of James Douglass, late of etc., and all persons claiming under each of them respectively did covenant and agree to warrant and forever defend unto them the said William Huffington and James Huffington, their heirs and assigns. It is then stated in the declaration that by virtue of the said indenture the said William and James Huffington were seised of all the estate, right, title and interest, of in and to the said land which, by the indenture aforesaid could be conveyed to them,

and being so seised, the said James Huffington and Susanne, his wife, on November 26, 1807, by a certain indenture made between them and William Huffington, did grant bargain and sell and forever quit-claim, release, remise and forever quit-claim unto the said William Huffington, his heirs and assigns forever, of and for all his right, title, claim and demand in and unto the said land to be the real right and property of the said William Huffington, his heirs and assigns, in as full and ample manner as if he had purchased the whole of said land from the Adamses; and that by virtue of the said last mentioned indenture the said William Huffington, deceased, in his lifetime was seised and possessed of all the estate, right, title and interest of, in and to said land which by the first mentioned indenture was conveyed to the said William and James Huffington. Then the declaration states the possession of William Huffington, and his death, intestate, on March 20, 1814, and that his estate in said land descended to his heirs at law.

The breach laid is that John Adams and William Adams did not on August 27, 1807, the time of sealing and delivery of said first mentioned indenture, nor before that time, stand seised, nor were they seised in fee simple of the land intended by said indenture to be conveyed to grantees William and James Huffington; and that they had not then, nor before that time, good right and lawful authority to sell and convey the same to the said Huffington's. And that on the day and year aforesaid the lawful heirs or assigns of a certain James Douglass, then deceased, had good right and lawful authority to sell and convey the same; and that the heirs or assigns aforesaid (of said J. Douglass), having such lawful right and title, afterwards on the [——] day of [——] in the year [——],[1] Jesse Green, deriving lawful title from or under the said James Douglass, entered upon and evicted the heirs of the said William Huffington, etc.

The question here to be decided is whether the administrators of William Huffington can maintain this action, the entry and eviction by Jesse Green being made on the heirs of William Huffington.

If this were a personal or collateral covenant, and not a covenant which runs with the land, and a breach was committed as soon as the deed were made, the plaintiffs below must fail; for it would survive to James, the joint covenantee, and he alone must bring the suit. Upon no principle could William, or his heirs or administrators, maintain this action in the lifetime of James, but that James by his release passed all his es-

---

[1] Blanks in manuscript.

tate or interest in the land to William, and that the covenant passed with the land. Every conveyance by one joint tenant to his companion operates as a release and passes the estate, and the releasee will have the whole as by the first feoffment or grant. Co.Litt. 273b, 2 Cro. 696; and it follows that this covenant, if it runs with the land, passes with it to the releasee. But if this be a covenant in gross, or a personal or collateral covenant, then the release will not pass a right of action for a breach committed before the release was made. For how could the release by passing the right or estate in the land pass the right of action, unless the covenant ran and continued with the land? The mere release of the land will pass nothing but what is incident or attached to it. And if this be a personal or collateral covenant, the right of action for a breach of it could not be transferred or passed. If one joint tenant of a reversion depending on a lease for life releases to the other, the release is good; but if the rent be in arrear, the one cannot release his interest in the arrearage to the other. 4 Bac. Abr., title "Release," C. The case of *Noke v. Awder*, Cro.Eliz. 373, 426, proves that a covenant cannot be assigned or transferred to enable the assignee to bring an action unless it be dependent on the land and passes with it. And in *Webb v. Russel*, 3 Term 393, 678, H.Bl. 562, it was clearly decided that a collateral covenant, or a covenant which did not run with the land, could not be transferred so that the grantee could maintain an action, although the whole estate in the land had been conveyed to the plaintiff in that suit. In the common case of assignees, if the covenant be broken before the assignment, the assignee cannot have an action, 3 Com.Dig. 262, title "Covenant" B 3, Cro.Eliz. 863, 3 Leon. 51. See Bac.Abr. title "Covenant" E. And so assignees are not liable for any breach before the assignment, 1 Salk. 199, 3 Burr. 1271, 1 Bl.R. 351. This, though, is not a personal or collateral covenant, it runs with the land; and for a breach committed, William Huffington, in his lifetime, or his heirs after his death, might bring an action.

In this case it is stated that William and James Huffington were seised of all the estate etc. which by the indenture of the Adamses could be conveyed to them; and that by virtue of the indenture of James to William, William in his lifetime was seised and possessed of all the estate etc. in the land which the Adamses had conveyed to him and James, and that William being in possession of said land died; and that the estate, right, title and interest of said William descended to his heirs at law; then that Green entered upon and evicted the said heirs. This suit is then brought by the administrators to recover satisfaction for damage sustained by the heirs by this entry and evic-

tion, after the heirs had entered by descent into this land. The case has been argued by the defendant in error, the plaintiff below, on the ground that this was a breach of covenant at the time the deed was executed, and that by the release of James the right of action passed to William, and therefore that his personal representatives might bring the suit.

In 3 Term 401, *Webb v. Russel,* Lord Kenyon says that it is extremely well [2] settled at common law that covenants which run with the land will pass to the person to whom the land descends. If so then, and of this there can be no doubt, who shall take advantage of a breach of such covenant? Certainly he to whom the land passes, and especially when the entry and eviction has been made upon him to whom the land descended. If such person shall take advantage, none other can, and consequently a suit will not lie by an administrator. In conformity to this doctrine, in notes added by Wood to his Conveyance, 2 Wood Conv. 349, he gives this case, which he cites from Winch 19, and which is referred to in Wood because Winch is not to be had here. Declaration that the defendant enfeoffed his testator in certain lands, and that he covenanted for him and his heirs that he was seised of a good estate in fee, and he alleges the breach. *Per Curiam,* the covenant being made with the heir, the executor shall not have the action, for the covenant is annexed to the land.

In 6 Vin.Abr. 390,[3] pl. 5, is the following case cited from F.N.B. [145] (C), "If a Man make a Covenant by Deed to another and his Heirs to enfeoff him and his Heirs of the Manor of D &c. now if he will not do it, and he, to whom the Covenant is made, dies, his Heir shall have a Writ of Covenant upon that Deed. And also his Assigns shall have a Writ of Covenant where the Covenant is made to him and his Assigns." Viner has added the following note to that case:

> "If I covenant with *A* and his Heirs to convey Land to him and his Heirs, there the Feoffment shall be to the Heir; For the Heir shall have Covenant; Per Hyde, Ch. J., Palm. 558. Trin. 4 Car.B.R. cites *Laughter's Case.* — S.P. And. 55, Hill. 16 Eliz. in pl. 132. *Wootton vs. Cook,* S.P. and Judgment for the Plaintiff; because in the Register is a Writ of Covenant for the Heir in the same and like Case, and for that the Intent of the Covenant is to have the Inheritance convey'd to the Heir, which Covenant, had it been perform'd, the Heir would have advantage of whatever by the

---

[2] At this point, *Ridgely's Notebook III, 525,* the account of this case is interrupted; it is resumed at *543.*

[3] Manuscript reads, "360."

Performance of the Covenant would have accrued;[4] and by the same Reason he shall have the Damages which accrue by the Non-Performance thereof, and therefore and because there is Privity enough between the Father and his Heir to convey the Action Judgment was given as before." *Laughter's Case* in Viner's note is, I believe, the case of *Laughter v. Williams,* 2 Lev. 92, where lessee covenanted with lessor, his executors and administrators, to repair and to leave the premises in good repair. It was adjudged that. this was a covenant which ran with the land and goes to the heir without naming him, and it appears that it was intended to continue after the death of the lessor, as the executor was named.

In addition to these authorities are the modern cases cited by *Mr. Robinson* on the part of the plaintiff in error. In 1 M. & S. 355 is the case of *Kingdon, Executrix, v. Nottle,* which was an action brought by an executrix on a covenant in a deed for the conveyance of land with a proviso for redemption on the payment of £450, whereby the defendant covenanted with R. Kingdon, the testator, that he, the defendant, was at the time of the execution of the indenture seised of and in the premises of a good and indefeasible estate of inheritance in fee simple, and that he had good right to convey the same. The breaches assigned were: that the defendant was not seised in fee at the time of the execution of the indenture; and that defendant had not at that time good right to convey. There was a special demurrer to this declaration. The court held that because there was no damage to the testator, and because a recovery by the executrix would bar the heir, and because this was a covenant real and the right of suit descended to the heir, that the action would not lie by the executrix. 4 M. & S. 53, *Kingdon v. Nottle,* was an action brought on the same covenant by the devisee, and because the covenant passed with the land to the devisee and was broken in the time of the devisee, for that so long as defendant has not a good title there was a continuing breach, and the substantial breach was in the time of the devisee, for she had thereby lost the fruit of the covenant in not being able to dispose of the estate, it was adjudged that she, the devisee, should recover. *Jones v. King,* 4 M. & S. 188, is perhaps stronger than the other cases cited from the same reporters. On a conveyance by indenture by husband and wife of lands in fee,

---

[4] Manuscript reads, " . . . and for that the Intent of the Covenant is to have the Inheritance conveyed to him, which Covenant, had it been performed, the Heir would have had advantage of whatever by the Performance would have accrued."

they covenanted with the grantee and his heirs to make further assurance upon request of the grantee and his heirs. The heir brought an action on this covenant and assigned for breach that his ancestor requested the husband that he and his wife should levy a fine to pass the estate of the wife legally to him and his heirs, which they refused, *per quod,* after the death of the ancestor, the devisee of the wife ejected the heir. Then, although there was a breach in time of the ancestor by refusing to make further assurance, yet the heir recovered as he was damnified, inasmuch as a fee had not descended to him, which it would have done if the party had fulfilled his covenant and performed the act required.

These cases confirm the ancient authorities, but none of them, except perhaps the last, is so strong as the case now before us. Here the heirs of William Huffington were ejected, after the land had descended to them, by the very title which it was intended by the covenant to protect them against. Their father received no damage; and as they have suffered all the damage by this breach of covenant, it is not conceivable they should not in their own right and own persons have the remedy. If this covenant runs with the land, as it surely does, it follows that they should have the advantage of it. The breach of covenant in the life of the ancestor is nominal, the actual damages have been sustained by the heirs, and therefore, they, in conformity with all the authorities, should have brought the action.

On the part of the defendant in error were cited upon this point by. *Mr. Johns:* Cro.Eliz. 916; *Bradshaw's Case,* 9 Co. 69; and *Lucy v. Lavington,* 2 Lev. 26. The case in Croke arose on a demise for six years. The covenant was that the lessee should quietly enjoy the estate, discharged from tithes. The question was whether the covenant was broken by a suit for the tithes after the expiration of the term. The suit was brought by the lessee himself, and it was adjudged that the suit for the tithes after the determination of the term was a breach of the covenant. That case, if it has any analogy to this, would go to show that the breach of covenant here did not happen till the entry and eviction by Green. Thus, though the action was brought by the lessee, who was the person injured by the suit for tithes, and it was deemed by the court to be within the intention of the covenant, it does not prove that this action can be brought by the administrators. *Bradshaw's Case* was a demise of land for six years, with a covenant that Bradshaw, the covenantor had full power and lawful authority to demise the premises. The lessee himself brought the action and assigned

for breach that Bradshaw had not full power and lawful authority to demise, etc. The court said that the covenant referred to the time of the lease made, and by the recovery of damages it is clear that the lessee had been injured, and he himself brought the action for the breach, to be compensated for the actual damage he had sustained. The principle of this case is not at variance with the case before referred to, particularly as this was a demise of land which would not descend to the heir, but would go to the executor or administrator.

In *Lucy v. Lavington,* A conveyed to B in fee and covenanted with him, his heirs and assigns for quiet enjoyment. B was ejected and died; his executors brought an action of covenant, and it was resolved that the eviction being of the testator, he could not have [been] either heir or assignee of this land, but the damages should be recovered by the executors. In 1 Vent. 178 the reason assigned is the same as in Levinz; to wit, that the eviction was in the testator's lifetime. *The Case of Bradshaw* is used by Shep.Touch. 170 to support the position that such a covenant is broken as soon as it is made; and also by Com.Dig., title "Covenant," B 1, and it does support the position as applied to those particular cases. But after a most diligent research, no case has been found of a recovery by an executor or administrator upon the eviction of an heir. Bac.Abr., title, "Covenant" E, says that covenants real, or such as are annexed to the estate, shall descend to the heirs of the covenantee, and he alone shall take advantage of them. And in a note it is added, *secus* of covenants in gross. Pal. 558. Also for a breach in the time of the covenantee, the action shall be brought by his executor, though the covenant was with him, his heirs or assigns only. Vent. 175, 2 Lev. 26 adjudged—in such actions the damages go to the executor, because the real injury has been done to the testator.

Upon the whole, this action cannot be maintained by the administrators of William Huffington, and we are of opinion that the judgment should be reversed.

Judgment reversed unanimously.

----

NOTE. In the declaration the deed of John Adams and Sarah, his wife, and William A. Adams and Margaret, his wife, to William Huffington and James Huffington; and the deed of James Huffington and Susanna, his wife, to William Huffington are pleaded in the words of the deeds. Should not the deed of James Huffington to William have been pleaded as a release? See 4

664

Bac.Abr. 100, title "Pleas and Pleading." In 2 Saund. 96, *Chester v. Williams*, 97b, note 2, pleading in the words of the deed that "he gave, granted," etc. is bad and reversible on error. The deed must be pleaded, at the peril of the party, as he intends to use it. See also 5 Com.Dig. title "Pleader" 346, (C 17). See 5 Com.Dig. 342, title "Pleader" (C 30, 31) as to pleading when a thing is alleged only as an inducement. *Pollard and Pickett v. Dwight et al.*, 4 Cranch 421, an action may be supported on a covenant of seisin, although the plaintiff has never been evicted; and the declaration need not aver an eviction.